# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____ )
WILLIAM McNAMEE,                          )
      Plaintiff,                          )
                                          )
    v.                                  )       **CIVIL ACTION**
                                          )       **No. 12-40050-TSH**
**COMMONWEALTH OF**                       )
**MASSACHUSETTS,**                        )
      Defendant.                          )
_____ )

## MEMORANDUM AND ORDER ON PLAINTIFF'S RENEWAL OPPOSITION TO THE MOTION OF EDWARD M. AUGUSTUS, JR. TO QUASH THE SUBPOENAS AD TESTIFICANDUM
### March 25, 2013

**HILLMAN, J.**

## I. Procedural Background

This matter arises from an ongoing worker's compensation adjudication at the

Massachusetts Department of Industrial Accidents ("DIA").  In 2007 the DIA found William

McNamee ("Plaintiff") to be disabled and unable to work due to mental injuries sustained while

working at the University of Massachusetts Medical School ("UMass Medical") as a Program

Development Manager for the Health and Criminal Justice Programs from 2000 to 2003.  This

decision entitled Plaintiff to temporary benefits.  A subsequent decision by the DIA in 2010

found Plaintiff to be entitled to permanent disability benefits for the same injuries.  The DIA is

currently hearing a third disability claim arising from these same injuries.  Plaintiff seeks double

benefits, claiming that UMass Medical committed serious and willful misconduct, thus entitling

him to benefits under Mass. Gen. Law ch. 152, § 28.  In the course of this hearing Plaintiff served

subpoenas on both Representative James McGovern and his former chief of staff Mr. Edward Augustus, Jr. ("Augustus") on April 12, 2012.  Rep. McGovern and Mr. Augustus removed the subpoenas to U.S. District Court and moved to quash them on grounds of common law immunity for "high ranking officers" of the federal government, the so-called *Morgan* doctrine.  On May 10, 2012 this Court found that Rep. McGovern was immune under this doctrine and quashed Plaintiff's subpoena.

However, while this Court did rule that Augustus qualifies as a "high ranking official" for the purposes of this dispute, the subpoena against him was quashed "without prejudice to its renewal if plaintiff, after seeking testimony regarding the circumstances of his employment from other sources, makes an adequate demonstration of extraordinary circumstances."  Plaintiff has now filed a motion for such renewal.  Augustus in turn opposes this motion and reasserts his own immunity from any such subpoena.

## II. <u>Facts</u>

Plaintiff was hired by the University of Massachusetts ("UMass") in 1997, to work at the Donahue Institute first as an assistant Operations Manager, and eventually as Operations Manager.  In 2000, he was dismissed from this position.  Plaintiff alleges that this dismissal was retaliatory in nature, stemming from Plaintiff's whistleblower actions with regard to certain operational irregularities at the Donahue Institute.  Plaintiff and his brother, John McNamee, sought assistance from Rep. McGovern, with whom they had some acquaintance.  At all times relevant to this dispute, Augustus served as Rep. McGovern's chief of staff and was involved in the communications between Plaintiff and the congressman.

Ultimately, Plaintiff was re-hired in 2000 by UMass in a different position, that of Program Development Manager at the Health and Criminal Justice Programs at UMass Medical.

Plaintiff avers that he was extremely unsatisfied with his work experience in this new position, being at first left without any duties whatsoever and later hopelessly overworked.  Plaintiff's health deteriorated sharply during this period; he suffered from anxiety, emotional problems and headaches.  Seeking a position better suited to his skills, Plaintiff reports submitting applications for many different positions in other UMass divisions, none of which were accepted.  In late April or early May of 2003, Plaintiff and his brother once again contacted Rep. McGovern for assistance with Plaintiff's increasingly difficult work environment.  Plaintiff nevertheless continued in his position as Program Development Manager until May 16, 2003 when his employment was terminated without cause.  Discussions between the McNamees and Rep. McGovern's office continued after Plaintiff's termination, and John McNamee claims that he was told by Augustus that UMass Medical management was actively blocking Plaintiff's request for transfer within UMass.  For his part, Augustus avers that he does remember Plaintiff and his brother communicating with Rep. McGovern regarding Plaintiff's employment in "the early 2000's," but claims to remember no details about those communications.

Ultimately, after leaving UMass Medical and finding himself unable to sustain regular employment, Plaintiff filed a series of claims with the DIA which, as discussed above, led to the instant case.  Pursuant to this Court's May 10 Order the DIA heard additional testimony regarding Plaintiff's transfer requests.  John McNamee testified that he had direct conversations with Augustus in 2003 regarding Plaintiff's employment and transfer requests.  Plaintiff's ultimate superior at UMass Medical, the Deputy Chancellor of Commonwealth Medicine Thomas Manning also testified, stating that while he currently has no recollection of any direct conversations with Augustus in 2003, his 2007 testimony that he had spoken to Augustus about

plaintiff was "probably correct."[1]  UMass Medical also called Karin Fitch, a Senior Manager in the Human Resources Department at UMass, to testify about the university's hiring practices, both in general and specifically with regard to Plaintiff's transfer requests.  Ms. Fitch testified that she had no personal knowledge of any interference with Plaintiff's transfer requests.  Ms. Fitch also testified that she was at the relevant time only an initial evaluator of job applications, and was not in a position to have observed or otherwise known about any of Thomas Manning's alleged interference.

### III. <u>Discussion</u>

Augustus makes two separate claims of immunity, one under the so-called *Morgan* doctrine, which strongly discourages the practice of calling "high ranking government officials" as witnesses, and another, not raised earlier in this dispute, under the doctrine of sovereign immunity.[2]  Augustus' claim of immunity under the *Morgan* doctrine is compelling and Plaintiff's motion to renew the subpoena ad testificandum is denied.

#### *The Morgan Doctrine*

Augustus' first claim for immunity rests on *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (citing *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999 (1941) for the principle that "the practice of calling high ranking government officials as witnesses should be discouraged").  This judicial policy is necessitated by the reality that "[h]igh ranking government officials have greater duties and time constraints than other witnesses."  *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *see also Springfield Terminal Ry. Co. v. United Transp. Union*, 89-0073 1989 WL 225031 (D.D.C. May 18, 1989) (quashing subpoenas against a

---

[1] This 2007 testimony was given at an earlier DIA hearing.  Transcripts of that testimony are not before the Court in this action.

[2] Augustus had previously asserted a third defense: immunity on the grounds of House of Representatives Rule VIII. This Court declined to decide on this issue in its May 10, 2012 Order, and Augustus relinquished this position on December 3, 2012, at a hearing on Plaintiff's motion to renew the subpoena against Augustus.

member of Congress based on the principles articulated in *Morgan*).  There is a legitimate
government interest in protecting the decision-making process of government officials must from
unwarranted and frivolous inquiry.  *Coleman v. Schwarzenegger*, No. CIV-S-90-0520 LKK JFM
P, 2008 WL 4300437 at *2 (E.D. Cal. Sept. 15 2008).

     Nevertheless, this limitation is not absolute and such a subpoena should be granted where
the government official has personal knowledge of the underlying facts and when necessary to
ensure fairness to the parties.  *Gibson v. Carmody*, 1991 89 CIV. 5358 (LMM), 1991 WL
161087 *1 (S.D.N.Y. Aug. 14, 1991) (holding that although permission to depose current or
former high ranking government officials "should not lightly be granted" it is appropriate where
the official has personal knowledge of underlying facts); s*ee also United States v. Sensient
Colors, Inc.*, 649 F. Supp. 2d 309, 322 (D.N.J. 2009) (holding that courts should allow the
deposition of former high ranking government officials upon a showing that the official has
personal involvement or knowledge relevant to the underlying case and that equivalent testimony
was not available elsewhere); *Toussie v. County of Suffolk*, 2006 WL 1982687, *2 (E.D.N.Y.
July 13, 2006) (holding that depositions of former government officials are generally granted
where the official has personal knowledge of the event at issue in an underlying case); *Hankins
v. City of Philadelphia*, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996) (disallowing the
deposition of the Mayor of Philadelphia where the plaintiff could not show that the Mayor had
any personal involvement in the events at issue in the underlying claim).

     This Court has already ruled that Augustus qualifies as a "high ranking government
official" for the purposes of this dispute.  In light of this fact and the caselaw presented above,
Plaintiff's subpoena of Augustus will be quashed unless (1) the information sought is essential
(not merely relevant) to the case, (2) the information sought is not obtainable elsewhere, and (3)

provision of the testimony will not interfere with the official's government responsibilities. *In re F.D.I.C.*, 58 F.3d 1055, 1061 (5th Cir. 1995); *Hankins*, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996) (internal citations omitted).

<u>*The Information Sought is Essential*</u>

Proving willfulness on the part of UMass Medical and/or its agents is a necessary element of Plaintiff's current DIA claim for double disability benefits.  Mass. Gen. Law c. 152, § 28. Plaintiff asserts that Augustus' testimony could provide evidence that UMass Medical refused to consider Plaintiff's transfer requests willfully and without regard to Plaintiff's health.  Plaintiff avers that Augustus possesses personal knowledge of communications between Rep. McGovern's Office and agents of UMass Medical and the McNamees that tends to prove willful misconduct on the part of UMass Medical.  Augustus refutes this claim, contending that even with the additional evidence gathered after this Court's May 10 Order, Plaintiff has not shown that Augustus currently possesses knowledge essential to Plaintiff's claim.

First, Augustus argues that Thomas Manning testified in June 2012 that he did not intentionally interfere with Plaintiff's requested transfers, and had no recollection of telling Rep. McGovern, Augustus or anyone else that he had done so.  Second, Augustus suggests that John McNamee has failed to testify that he had direct communications with Mr. Augustus.  This latter suggestion is incorrect as Plaintiff's brother did explicitly identify Augustus by name in his June 2012 testimony before the DIA: "I called Edward Augustus.  I remember it well because it's not every day that I talk with a congressman's chief of staff."  *Exhibit 7* 36:18-20 (Docket No. 27-1). Plaintiff's brother went on to recount specific statements made by Augustus concerning the underlying DIA dispute's central issue: the willfulness of UMass Medical's conduct surrounding

Plaintiff's requested transfers.[3]  Finally, Augustus also argues that any testimony he provides is "unlikely to result in any admissible evidence under the Massachusetts Rules of Evidence" and that Plaintiff has not adequately demonstrated that Augustus has personal knowledge of the communications at issue.  Augustus concedes in his affidavit that he does have some personal recollection of conversations about Plaintiff's employment during the relevant time.  However, Augustus further avers that he does not recall any details of the relevant conversations.  This latter assertion is significant, as it raises serious questions about the utility of any testimony from Augustus.

The ALJ at the DIA has already stated that the circumstances surrounding Plaintiff's repeated requests for transfers are a "critical component" of this case.  The court therefore finds that Augustus' testimony is only essential to Plaintiff's claim if it is able to provide some evidence as to the intent of UMass Medical's actions.   This is not the case.  In the light most favorable to McNamee, Augustus' testimony could establish that he personally spoke with a UMass Medical representative and that statements made in that conversation prove willfulness. The additional testimony taken after this Court's May 10 Order, particularly that of John McNamee, is evidence that Augustus was contacted by McNamee about the relevant events.  The record before this Court is that, while he may once have been able to offer testimony in this case, Augustus cannot now remember the contents of those conversations or the intent of UMass Medical's conduct.  Augustus' personal declaration is clear and unequivocal about his lack of memory.

Simply put, while all parties agree that Augustus was personally involved in some communications, this fact in and of itself is no aid to Plaintiff's underlying DIA claim.

---

[3]  The presiding ALJ declined to accept this testimony as proof of any willful interference on the part of Mr. Manning or UMass Medical, but did accept it as evidence that Augustus had made such statements to John McNamee.

Therefore the testimony Plaintiff can reasonably expect to receive from Augustus is not essential to his case.  In order to show extraordinary circumstances and pierce the shield of the *Morgan* doctrine, Plaintiff must adequately demonstrate that all three of the doctrines requirements are met.  Plaintiff has failed to satisfy the first element, and it is unnecessary to consider the other two.  It is similarly unnecessary to consider Defendant's sovereign immunity claim.

## IV. <u>Conclusion</u>

Plaintiff has adequately demonstrated that Augustus was personally involved in the relevant communications, but has failed to show that Augustus can provide testimony that is essential to the underlying DIA claim.  Therefore *Pl.'s Renewal Opp'n to the Mot. of Edward M. Augustus, Jr. to Quash Subpoenas ad Testificandum* (Docket No. 24) is **DENIED**.

*/s/ **Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE